We have two argued cases this morning. The first one is No. 14-1086, Actelion Pharmaceuticals v. Lee. Mr. Hoxie. Thank you, Your Honor. Good morning, and may it please the Court. So, a lot has happened since you filed your opening brief. In the light of the Novartis case, which is binding on us as a family, what are you left with to argue today? Your Honor, the Novartis case, unlike this case, did not involve a facial challenge to the interim procedures promulgated by the PTO under the APA. The Novartis case did not invoke correction of a patent office mistake, which is clearly disclosed by the records of the office pursuant to 35 U.S.C. 254. So, the correction in the Novartis case and the issues in the Novartis case relate exclusively to the provisions of 35 U.S.C. 154B. And we are filing a case under the Administrative Procedures Act, challenging, making a facial challenge to an interim procedure that was promulgated by the PTO to address correction of patents pursuant to the Court's decision in Wyeth. So, it is a different legal issue. It was brought on a different statutory basis. And the Novartis case relates to the particular facts and circumstances of that case and not, in any way, it wasn't briefed and argued as relating to the interim procedures. Well, if the interim procedure did no more than allow relief during the period the statute allowed relief, that is 180 days, why would that be substantive? Your Honor, I don't believe that the 35 U.S.C. 154B provides any period or any limitation on period for relief to be granted by the PTO. The interim procedure is a general corrective mechanism, something which is part of the PTO's general plenary authority to correct its own mistakes, which is an authority which is found in 35 U.S.C. 254. So, you regard the interim procedure as limiting the 254 authority? Yes, Your Honor. What we're arguing today is not that, not arguing that the interim procedure or Section 254 apply to any and all PTA corrections. What I am saying is that they do apply, that 254 does apply to any and all mistakes in a patent incurred through the fault of the Patent and Trademark Office where it is clearly disclosed by the records of the office. And that authority for the Patent Office to correct its own mistakes is a general authority and applies across the board to all kinds of mistakes and certificates of correction in patent cases can be issued at any time during the term of the patent. But we've regarded the authority of the courts to compel the PTO to make corrections as limited to situations where the error is apparent on the face of the patent, which is not the case here, right? Your Honor, I disagree. It is apparent from the clearly disclosed by the records of the office. Well, that may be true, but that's not the same as being apparent from the face of the patent. Your Honor, the statutory standard is clearly disclosed by the records of the office. It doesn't say face of the patent. Yeah, but our cases say, nobody cites the Novo case, but our cases say that whatever the authority of the PTO to do something independently, the authority of the court is limited in requiring the PTO to issue a correction, is limited to situations where the error is apparent on the face of the patent. Your Honor, this… Are you familiar with the Novo case? I'm not familiar with that particular piece that Your Honor is citing, but let me say that what we are arguing relates to the court's authority under the Administrative Procedures Act. And the court does have authority, and here we have a rule where the PTO has said, as a matter of blanket determination, as a matter of what I would submit as legislative rulemaking, that, quote, the USPTO will deny as untimely any request for recalculation of patent term adjustment indicated on the patent that is not filed within 180 days of the date that the patent was granted. That 180 days does not come out of, you know, that 180 day limitation on consideration for corrections and stakes does not come out of any statutory authority. And effectively, what it does is it says the interim procedure became, was created, became effective without notice or comment or prior warning or discussion or rationale or justification, or it just appeared in the Federal Register one day. Well, is your theory that the PTO is obligated to correct errors that are apparent from the records of the office even if it doesn't want to? My theory is that the PTO is obligated under the Administrative Procedures Act where a statute has given the discretion to the PTO to exercise that discretion, not abuse that discretion. They can't limit their own discretion. Not in the blanket manner, Your Honor. Discretion is something that they need to exercise on a case-by-case basis. Drawing a line like this, the 180-day line in the sand, is quintessentially a legislative determination. It could have been 180 days. It could have been 20 days. It could have been two years. I understand that there may well be policy reasons to draw lines, but that policy-making authority is not something which has been delegated to the Patent Office. Whatever the reasons are, they're not reasons that appear anywhere on the administrative record because there was no notice and there was no comment and there was no explanation for this rule beyond the fact that the PTO said in the preamble to the interim procedure that it needed to change its computer program. What the interim procedure does, and there are two aspects to the interim procedure. The first is a genuinely procedural within the meaning of the Administrative Procedures Act. It creates a streamlined procedure which is narrow and tailored to permit correction of a very specific error, an error which can be assessed and corrected using, as they say in the interim procedure, a computer program. It's a purely mechanical correction, and the interim procedure says that it is only available for correcting that kind of error. The errors which relate to more contentious issues, for example, when there's a dispute about was this delay attributable to the applicant or to the office, which is a common source of contention under 154. Those kinds of errors can't be raised under the interim procedure. The interim procedure is purely for correction of a particular kind of mistake which is readily apparent and easily corrected. In that regard, the interim procedure is very good. It's exactly the kind of efficient rulemaking that you expect, and it's understood by the procedural rules, the streamlined procedural rules authority under the APA. But there's a second aspect to the administrative procedure, and that is that the procedure, as I said, states explicitly that it will create, without statutory authority, a 180-day time limit for recalculation of patent term adjustment. So that is a firm date. That is not a date that appears under 154, because 154, it might limit the court's ability to consider the time to take an appeal from a particular determination of the patent office. But it doesn't limit the ability to correct mistakes of this kind, which are clearly disclosed by the records of the office and incurred through the fall of the patent and trademark office. So, Your Honor, I would submit that insofar as the interim procedure is effectively cutting off significant rights, right to obtain correction, which is a right that you have if you have an error in your claims through a type of gratitude error. In terms of judicially enforced correction, the Novo case says the courts will only require correction of a patent when the error appears on the face of the patent. And that is not the situation, correct? Your Honor… Is it a situation in which the error is apparent on the face of the patent? No, Your Honor. It's not a situation where the error is apparent on the face of the patent, but it is a situation where the PTO has been given discretionary authority and they've abused that discretion. And, Your Honor, I would submit that there are lots of corrections that are made. If there's a correction, for example, to a typographical error in the claims, or the office's failure to enter an amendment, and then years later, the patentee suddenly discovers, oh, there's a mistake in the claims. That is not an error which is evident on the face of the patent. That's an error where you have to go back there and look and see what was presented to the office and what wound up in the patent. So it is evident that kind of an error in a typical situation where a certificate of correction is used, that is a kind of error which is clearly disclosed by the records of the office. Well, we said in the Novo case that that kind of error was required to be corrected only when it was apparent from the face of the patent. That's looking at the specification of the claims. There's a Supreme Court case about this. I understand your argument that quite apart from that, in your view, the PTO has authority to correct errors that aren't apparent on the face of the patent and that are apparent from the records before the patent office under 254, that that authority has been cabined by the interim procedure. I understand that argument. But it's not a right to have it corrected. At least it's not a right that's enforceable in court. Your Honor, the interim procedure is a violation of the Administrative Procedures Act, and the Administrative Procedures Act creates a right to certain kind of process when an agency is implementing rules. And I think that that process was not followed here because there was no notice, there was no comment, there was no justification. And this is a substantive rule that affects substantive rights. And I don't think that there's anything that would overrule the Administrative Procedures Act in that regard. Your Honor. Okay. Save the rest of the time. I'd like to preserve the time if you would, by the way. Ms. Wright? Good morning. Good morning. Abby Wright on behalf of the PTO. I'd be happy to answer any questions. Can you follow up on the major thing that's been a discussion here? First of all, do you read the interim procedure as negating any otherwise available authority under 254 to make a correction? Well, that was the point I wanted to make, Your Honor, with it. The Section 254 argument, I think, appears first in the briefing in this court. So there is a mechanism under 254 to file a petition with the PTO to ask them to correct an error. That was never done here. So the PTO hasn't actually weighed in on the issue of the appropriateness of Section 254 with respect to the patent term adjustments here. I don't think the interim procedure speaks to that. It doesn't discuss Section 254. It cites 1.183, which is the regulation that provides that in exceptional circumstances where justice requires, PTO can waive regulatory requirements that aren't required by statute. And that's the authority under which PTO is proceeding here. But doesn't it say that there won't be any corrections outside of the 180-day period? It says that. It doesn't say specifically Section 254. So, as I said, PTO hasn't actually weighed in on that question. Well, what is the PTO's view as to whether under 254 it could correct the patent outside of the 180-day period? I don't think PTO has taken a position on that. I think that the key point here is that even if PTO has the discretion to do that, there's no basis for saying that PTO had to do it. No, but here I guess I'm just trying to explore this because this is not exactly developed well, so I'm thinking about it on the fly here. One version, I think, of Mr. Hoxie's argument is this. If the interim procedure in fact declared or means that 254 authority to correct was not going to be exercised, including 254 authority that, however exercised, we could not review because it wasn't on the basis of the face of the patent, then it seems like a substantive decision in the interim rules, not procedural, and if indeed it did that, why wasn't notice and comment required, even if at the end of the day we wouldn't be able to engage in judicial correction? I don't think it did that. I think precisely what it did was waive that two-month regulatory requirement that you file a request for reconsideration within two months. So what it spoke to was request for reconsideration, not Section 254 petitions for correction, which is a different standard, and a different standard from 1.183, which governs when PTO can waive regulatory requirements. So that's what it was speaking to. With respect to procedural versus substantive, someone like Actillion is in the exact same position whether or not there is this interim procedure. So even if the interim procedure were vacated, that doesn't put Actillion in a better position. They are out of time under 154 before they are out of time under 1.705. But their argument is that the PTO has discretion under 254 to correct outside of that time period, which may be incorrect. I mean it may be that 154 was designed to cabin the PTO's discretion under 254. I don't know. That hasn't been an argument that's been developed either. But they're saying to the extent that the PTO has discretion to correct outside of the 180-day period under 254, that's been cabined by this interim procedure and that that's a substantive change that should have had notice and comment. I don't see that argument really made in a brief and hasn't been developed. I think the way that would be appropriately developed would be with the PTO in the first instance weighing in on Section 254 through a petition for correction under Section 254. Has anybody done that? Not to my knowledge, no. Did you reference a regulatory provision for a petition under 254? I believe it's 1.322. What are the standards in that provision for a 254 correction? It's the same as in Section 254 itself, which is that clear error disclosed in the records of the patent office. And then there would be a question of what PTO's discretion under that provision is, and then a judicial review would be, I think, even more cabined. Well, would a YF error be something that was apparent from the records of the patent office? Well, it would be a clear error. As I said, the PTO hasn't weighed in on that, and I'm not really in a position here to say. I think there would be questions about what disclosed by the records means, because it doesn't simply plug it into the computer. It actually requires that a person evaluate the A delay and the B delay and then put all that information in and see what the calculation is different. But, again, PTO has not had an opportunity to address that issue. And, in fact, that issue wasn't raised in even the court below. So the parties have not briefed it, and the district court didn't consider it. But I thought they did raise the notice and comment rulemaking point of the district court. They did, but they didn't construe it as that it was substantive because it somehow spoke to Section 254. They simply argued that it was substantive because, in their view, it took away In their view, everyone was entitled to have their patent term adjusted, and the interim procedure took that away. But it didn't point to Section 254. What kinds of errors have been corrected under 254 in the past? I mean, I know the typographical errors in the patents have been corrected, but what sort of things have been solved by that? So the current PTO patent manual speaks to patent term adjustments in Section 254. And there's two. Section 254 is actually the mechanism that the director uses to correct when a request for reconsideration is granted. And then, secondly, when the computer program occasionally, I guess, prints out a different number than the patent actually says, and so that's corrected just as sort of Scrivner errors. So 254 is being used to make WIAT corrections if it was a timely petition for reconsideration? For any kind of change to the patent term adjustment. Your Honor, that's just the statutory mechanism that PTO uses to do so. But it says specifically in the patent manual that 154B, three procedures, and then that 1.705 is how you proceed for a correction when we're talking about a patent term adjustment. Of course, here at Gillian, it's far out of time for either of those two provisions. If there are no further questions, we ask this Court to affirm the judgment of the District Court. Okay. Thank you. Is Ms. Wright correct that she didn't raise the 254 point in the District Court? No. We did raise 254, and we've raised the authority. Could you show us where? In the District Court? I'm sorry. It is one of the grounds which was brought up. Ms. Wright just said that 254. Could you show us where in the record? In that brief? No. Any submission to the District Court? I'm sorry. Is there something in the appendix that will support your statement that you raised the 254 point in the District Court? Your Honor, we have said throughout the District Court. No, no, no. I'm not interested in your oral argument about what you raised. I would like to see where in the record there is support. Your Honor, I do not have the complaint in front of me, but that argument was substantively raised. And as far as the suggestion, is there somehow... Substantively raised in the complaint? Yes, Your Honor. Your Honor, we've been requesting from the very beginning to have correction. No, wait. To have correction. Wait, wait, wait, wait. The complaint begins on what page here? The complaint is not... It begins on page 53? The complaint begins on... That's wrong. Where is the complaint? Thank you. Your Honor, actually, for example... What page is it? 85. Your Honor... The director's failure to implement any... What are you reading from paragraph 16? I'm reading from paragraph 16. Any mechanism for the correction to have the term adjustment for the plaintiff and others similarly situated constitutes administrative misconduct. And this failure to allow correction, it doesn't say the word, you know, 254. So there's no mention of 254? Don't talk over me. Is there a reference to 254 in the complaint? I said that the statute 254 is not in the complaint. Okay. As far as I can see, Your Honor. However, the PTO, this 254 is the only phrase in 35 U.S.C. that uses the word correction, as far as I'm aware. And as Ms. Wright said just now, the statutory authority the PTO is claiming to make corrections, in any corrections in PTA, is under 254. So it is substantially before the court. And I'd further point out to you, Your Honor, that as far as the argument that a request for petition for correction or whatever hasn't been adequately, you know, brought before the PTO and the PTO hasn't had an opportunity to discuss this, the interim procedure is not ambiguous. It states explicitly that the USPTO will deny, as untimely, any request for recalculation of patent term adjustment indicated on a patent that is not filed within 180 days of the date the patent was granted. That does not limit, it's not a limiting statement. And that, you know, facial challenges to those kinds of regulations, this is a final rule, and facial challenge to a final rule is subject to judicial review from the moment the challenge rule is adopted. Okay. And I would just suggest, Your Honor, I see we're out of time. I think we're out of time. I would ask, Your Honor, just to add that. Thank you. Okay. The case is submitted.